# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FAI YANG,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

No. 04 C 6413
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Petitioner Fai Yang plead guilty on September 2, 2003 to the charge of importing approximately nine kilograms of opium in violation of 21 U.S.C. § 1952(a) and 18 U.S.C. § 2. In his plea agreement, Yang admitted that in 2002 he was "looking to recruit" someone to travel from the United States to Thailand to pick up opium and transport it back to the United States. Yang contacted co-defendant Her and asked Her if he wanted to go to Thailand. Her did not, but approached co-defendant James and asked James to go on the trip instead. Yang, Her and James agreed that Yang would pay Her and James for their roles in bringing suitcases containing opium into the United States. James flew to Thailand on April 7, 2002, where he met Yang. Yang gave James two suitcases containing table linens, knowing that the linens contained opium. On April 18, 2002, Yang and Her met James at Chicago O'Hare airport and helped James carry the suitcases to Her's truck.[1]

In his plea agreement, Yang reserved the right to argue that a two-level enhancement pursuant to USSG § 3B1.1(c) (the "organizer/leader" enhancement) did not apply to him. He also reserved the right to appeal the validity of his plea and the sentence imposed. Prior to

---

[1] All of these facts were admitted in Yang's plea agreement.

sentencing, Yang filed a *pro se* memorandum arguing that the facts of his plea agreement did not support the organizer/leader enhancement. Yang's counsel, Donald Young, did not join in the memorandum, as he did not believe he had a good faith basis for arguing that the enhancement did not apply. At sentencing, after considering the signed plea agreement, Yang's memorandum opposing the § 3B1.1(c) enhancement, and the governments' arguments in favor of the enhancement, I determined that the facts admitted in the plea agreement established Yang's role as an organizer/leader of his co-defendants. I sentenced Yang to 70 months imprisonment, at the low end of the applicable guidelines range.

Yang now asks that I vacate his sentence pursuant to 28 U.S.C. § 2255. Yang alleges that his defense counsel provided ineffective assistance in violation of Yang's constitutional rights by failing to file a notice of appeal. Yang also alleges that his sentence violated the Supreme Court's decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). Yang's *Blakely* claim is without merit. Yang raised no objection at sentencing to the constitutionality of the federal sentencing guidelines, nor does he now allege any cause to justify his failure to do so. Moreover, my decision to enhance Yang's sentence was based on the facts admitted in Yang's plea agreement. *See Blakely*, 124 S. Ct. at 2537 (statutory maximum is the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant") (citing *Ring v. Arizona*, 536 U.S. 584, 602 (2002)).

Yang's claim of ineffective assistance of counsel is more problematic. To prevail on a claim that his counsel's performance fell below constitutional standards, Yang must prove that Young's representation was objectively deficient and prejudicial. *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). An

2

attorney who fails to follow a client's direction to file a notice of appeal "acts in a manner that is professionally unreasonable," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), and a defendant is entitled to a new appeal upon a showing that counsel failed to file a requested notice of appeal, *Peguero v. United States*, 526 U.S. 23, 28 (1999).

Yang submitted an affidavit chronicling his difficulties with defense counsel. Yang avers that he instructed Young to: 1) specify in the plea agreement that Yang objected to the §3B1.1(c) enhancement; and 2) reserve the right to appeal the enhancement if it was applied. Yang further avers that "my defense attorney . . . assured me that in the event I was enhanced at sentencing for being an organizer or leader, he would file a notice of appeal on my behalf as my plea-agreement stipulated." Yang does not allege that he explicitly demanded that Young file an appeal after the sentencing. However, he does allege that he attempted to contact Young about the appeal but that Young either refused to accept or did not return Yang's phone calls. Young's affidavit, submitted by the government, directly contradicts Yang. Young avers that he consulted with Yang about his appellate options and advised him accordingly, but that Yang never instructed him to file a notice of appeal.

The government asserts that Yang cannot prevail on his claim absent credible evidence of a request to file an appeal, citing to *United States v. Shurti*, 2003 WL 22111028, at *2 (N.D. Ill. Sept. 10, 2003). Relying on Young's affidavit and experience as a criminal defense attorney, the government asserts that Yang's claims are "so 'palpably incredible'" that I cannot find counsel failed to file a notice of appeal in violation of his client's instructions. *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (hearing not necessary if petitioner makes allegations that are "vague, conclusory, or palpably incredible") (citation omitted). While Young's

3

assertions may be true, I am presented not with "palpably incredible" allegations by Yang, but with a genuine factual disagreement. *See Bruce*, 256 F.3d at 599 (overturning decision denying § 2255 relief and requiring evidentiary hearing when there was a question of fact about defense counsel's decisions not to present witnesses).

Further, unlike *Shurti*, I cannot conclude on the basis of the allegations before me that Yang and Young clearly consulted after sentencing and prior to the time Yang's notice of appeal was due. *Cf. United States v. Shurti*, 2003 WL at *2 ("if a consultation occurs, counsel's representation is only ineffective if counsel fails 'to follow the defendant's express instructions with respect to an appeal'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)). Here, there is a factual dispute as to whether a consultation occurred and whether Yang explicitly instructed his attorney to appeal. Young's good standing as a criminal defense attorney with more than 30 years of experience affects the weight of his testimony, but does not require immediate dismissal of Yang's § 2255 motion.

The government and I reach different conclusions from Yang's earlier decision to file a *pro se* submission, despite Young's representation, in order to disagree with the potential sentencing enhancement. The government contends that based on this previous *pro se* supplemental filing I should expect Yang to have filed a *pro se* notice of appeal once he realized that his attorney did not support his decision to appeal the sentence. I am not willing to place such a burden on Yang's past behavior. Yang's *pro se* submission clearly indicates his objection to the enhancement; it is not "palpably incredible" that he would have asked his attorney to appeal my decision applying the enhancement. *Cf. Shurti* at *2 (noting that defendant admitted

4

that he never expressly requested an appeal; in light of his consultation with his attorney, his silence could not logically indicate his desire to appeal).

For these reasons, I find that Yang is entitled to a hearing on the sole issue of whether he was provided ineffective assistance of counsel when counsel failed to appeal my application of the § 3B1.1(c) enhancement. The government is instructed to schedule a hearing at which Yang will appear via telephone from the Federal Prison Camp in Duluth, MN.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 22, 2005